Yes, Eric Bothan for the Bellflower Unified Sch. Dist. Okay, and then it looks like Ms. Whiteleather... I can't hear you, but you're ready? Ms. Whiteleather, the mute button is at your lower left. There you are. Okay. Yes, Your Honor, I am ready. Okay, you can go ahead and mute while Mr. Bothan proceeds, but I just wanted to make sure you were all ready and set to go. So if you're ready, Mr. Bothan, please proceed. Yes, thank you, Your Honor. May it please the Court, this is a case involving a special ed appeal. There was an administrative hearing. I was the attorney in that case at the administrative hearing, and then we went to the District Court, and now we're, of course, before the Ninth Circuit. The major issue in this case is the private placement of this child in a small Christian school, which occurred in September 8, 2014. She has an autistic disability, and the parents, she was going to school under an IEP that was consented to, and the parents withdrew the child in September 8 of 2014 to go to this New Harvest Christian school, and she didn't give the notice, the 10-day notice. In fact, the withdrawal occurred in September of 2014. Notice was not given until 2015. The statutes, as it's all briefed on the case, say that the notice must be given 10 days prior in order to be able to get reimbursement for tuition. That's 10 days prior to the withdrawal, and the reason for that is the District, if somebody is going to withdraw and go to private school, the District should... Mr. Bethen, you're talking about the reimbursement, I believe, right now, and that's true. Yes, that's correct. I think the main point that you argue in your brief, but if I recall correctly, you said the 10-day notice, that's permissive, the way it's written in the statute, it's not mandatory. It's like, I think it says may, the ALJ may reimburse, but it also does not necessarily mean that it's required to reimburse. Is that not correct? No, you're correct, but I think the discretion by the ALJ was abused because you had a withdrawal in September, and then they didn't give notice until, what, seven months later in April, and then are demanding the reimbursement, and the District should have been given the opportunity, and that's why you have the statute, to correct whatever the problems were. The real issue here is that the IEP that was in existence when she withdrew was consented to by the parents and has never been challenged. There's no basis for saying that the IEP did not provide the free and appropriate public education. It was not, there is no ruling on that. Are you talking about the IEP from 2013? Yes, 13-14 is what it was actually consented to in 14, but the 13-14 IEP was consented to, and there's no evidence at all that that IEP was not a fate. Nobody challenged it. They consented to, they withdrew their consent in April of 15 when they gave the notice, but they still consented to it. But isn't it, isn't it pretty clear from the letters that the parents were still interested in a public school placed by Pre-K-L, and that they were requesting that the school district provide an offer of a fate for the 2015 and 2016 school year? And isn't that sufficient under the law, under the regs of the agency to require the school district in which she's a resident, of which the student was a resident, to convene for a new IEP and to talk about this with the parents? Separate and aside from their request, it seems like an IEP needs to happen every year. So I guess I'm just trying to figure out, why wasn't the letter from the parents to the school district sufficient to put the school district on notice and to provide an updated, and at least meet with the parents? Well, the problem was, and what's really misstated in the district court decision and the decision of the ALJ, is the parents never had any intention at all of returning their child to the school. The letters you have are mostly from the attorneys. What's your best evidence on that? Because I am curious, I did see that there is a provision that says that if they are clear that they don't longer intend to go back to the school, that they may provide some relief for the school district. But where in the record, can you point me to where it's clear, where the parents are clear? Because it looks like from the letters, they're still sort of interested in exploring the possibility of going back to the school district. As I said, I handle the administrative hearing, and the testimony of the mother, I think, is very clear when she says her daughter is very happy where she is, and she has no intention. She never stated in the record that she had any intention of returning to the school district. Did she say in the record that she never had any intention of going back? Yes. That's what my understanding, my take of her testimony was. Tell me where in the record. So I can just, I want to make sure. Her testimony, I don't have the whole record right here, but it'd be, excuse me, Sandra Lewis' testimony, where she says that her daughter is very happy where she is. But all of these IEPs, we have district of location. I know it gets a bit confusing, district of residence. The Christian school was not in the Bellflower School District, but it was in the district of location, which was Norwalk La Mirada. And Norwalk La Mirada did what's called an ISP, but they also had obligations to continue to do IEPs because of the agreements the district had in the Ed Code. They had agreements. They wanted to go back to school. Then they need to go. If I want to get an IEP, that is, they need to deal with the district of location, which was Norwalk La Mirada. And that's our position. But still it goes on the reimbursement issue, Your Honor. It still goes back to the issue that there was no 10-day notice for the district to correct whatever was happening. And there was the actual IEP, the 13-14 IEP that was consented to by the parents was never found to be not a FAPE. So the requirement is you have to have, to withdraw like that and get reimbursement, you have to have a FAPE that is not correct, not a FAPE on the IEP. And that's what needs to happen under this law. Well, but I guess I'm trying to reconcile. I mean, and I want to hear what your best argument is because it looks like the agency's own interpretation of its regs indicates that the residence, school district is obligated still, even if the child is in another school and enrolled in another private school, is still obligated to provide a FAPE and make it available to her. And so, because it says, I believe, in the regulations, and they contemplate that upon a parent's request, a school district must evaluate a child residing in its district for purposes of making a FAPE available to her, even if she's enrolled in a private school in another district. And then our court has specifically stated in J.W. versus Fresno Unified School District, that even in situations where a parent has sent a letter that the student would be placed in a private school, in that case, in another state, a district, a school district, is still required to make a formal written offer of placement to the student. And here, the IEP that you're pointing to was from an evaluation, I think, that occurred in 2012. And so, I'm just trying to figure out, with those obligations and the parents' repeated letters and requests for a IEP, you know, to a meeting to convene regarding an IEP, how, what's your response to that? Well, for our district, and based on the information we got from the parent, not from the attorney, but from the parent, she had no intention of returning her child to the district. And that's what I've argued before. And I still, I mean, I was at the administrative hearing. I could tell what was going on. Mother was, go ahead, you're on. Obviously, you're not a witness, but so if we, you know, by reading the record, if that's not clear to us, you know, as it is clear, it sounds like it is to you, what's your best argument if that's not the case? Our best argument is if they wanted to get an IEP during, what, 15, 16, then they should have gone to Norwalk and requested it. But counsel, if I could just jump in, I think this is, Judge McGee has been asking you, the regulation says that it's incumbent upon the district of where the person resides. Are you saying that that's an incorrect reading of the regulation? Is the regulation invalid for some reason? Because if it's, if Judge McGee's reading is correct, then I don't really understand what your response is to that question. Well, my response is based, and it's probably explained a lot better in the brief than I can explain it right here. But the district of location, which was Norwalk, pursuant to the Ed Code and the regulation cited therein in our brief, clearly district of location has an obligation to do an IEP unless the parent makes it clear they want to come back to Bellflower. But in all the conversations we've had with the mother, that is not the case. But from the reading of the register, both may have an obligation, but it doesn't relieve you of your school district's obligation. Yes, but still there's no denial of faith because the 13-14 IEP was never challenged. They have to show that when they left, they knew that the IEP did not provide a faith, and neither ALJ or the district court dealt with the fact that the IEP was valid. And what's your best authority for that? The best authority is that the evidence that we have, that there was no evidence showing that the, the, this is the 13-14. This is the IEP that she had when she left the district. And that IEP was never challenged. And in order for you to get reimbursement for private school, not only do you have to give the 10-day notice, but you also need to show that the district, I'm sorry. I'm trying to square how you say it's never challenged when it's clear from the letters that the parents were not happy with, you know, the, with the IEP that they had and wanted to, and they were trying to resolve. They pulled her out of there. I think there was some discussion about the speech therapy that was going on. I don't know if you recall that particular issue that was raised. And then when they went to Norwalk, there was also some issues. And so then they came back and sent the letters to Bellflower saying, wanting to see what else could be offered. So I'm not quite sure when you say that that was never challenged when there were repeated letters from the parents trying to figure out if there's, you know, to convene. And I don't know if they need much more than that. And I'm trying to figure out what authority that you can point to that says they would require more. Because I understand what your argument is, but I'm just trying to follow what the, what, to me, the law regarding the regulations in our case law indicate and see how, where's your, that's your, your main. I'm sorry. The problem is that the IEP was not there. The consent was granted in like July of 14. She withdrew September 8 of 14. The notice of, to the district, which should have been the prior 10 day notice on April 23. That's when they revoked their consent. The consent needs to be revoked prior to withdrawal. So the district can correct the problem. But in 2015, at least, at least one of the letters, and I think it may have been, I don't know if it was the first one, the mother sent a letter to the school district explaining that the child was removed from the school district because of concerns for Kayle's safety. And because she was not making academic progress. And she's, she indicates that she's still, the mother indicates she's still interested in a public school placement for Kayle and requests that school district provide an offer of FAPE for the 2015-2016 school year. That's at ER 339. And then she further stated she would like to meet prior to the end of the school year. So she could be fully informed of the school district's offer prior to the start of the 2015-2016 school year. And it says, please consider this letter, my oral written request for an IEBT meeting to be scheduled for Kayle. And the response from the school district to every, I think every one of these type of requests was that they won't talk to her unless she re-enrolls, basically. That she would not convene a meeting until she re-enrolled. And I'm trying to figure out what is the authority to support that? The authority is the agreement that the statutes that are cited in the brief, that the district of location is responsible for that unless it's clear. And it still wasn't clear because you have those letters and those are obviously problems for the district. But the letters don't back up what the mother was saying. But I'm looking at the testimony. And pardon me for interrupting, but I was looking at the regulations and the agency's interpretation of its own regulations does not relieve the district of residence from that responsibility as well. And so when I asked what authority, I'm trying to figure out, I understand that the district of where she's going to school may have obligations as well. But I'm not seeing anything that says it relieves the district of residence. And so that's why I just wanted to answer that. It does when the evidence is that the parent has no intention of returning the child to the district. I think what was clear to me, and hopefully it's clear in the administrative record, the mother had no intention of doing that. And also just the timelines and the school that she went to, it's not appropriate. She's out for an autistic child. Let me see if Jim or Giselle have any other questions at this point in time. Well, he just alluded to the issue that I was interested in. In what way was the Harvest School there not appropriate? Well, there were no, number one, there's no credentialed teachers. There's no special education services. There's no objective criteria for students to present levels. And students cannot get an accredited diploma from the school. And the school is also Bible-based where all God and the Bible are interweaved into every subject. And finally, there's no socialization. Some of the classes she was in, I think it was eighth and ninth grade, there was only, she was the only child in the grade level. Do you have any authority for exclusion if there's Bible education within the curriculum? Well, what you have to show is that it's secular, neutral, and non-ideological. And in order to reimburse tuition for a school such as New Harvest, and none of those cases are true. The principal at the school testified and said everything is interweaved into God's Word, including science, including all of the classes. And then the student simply works on her own. But I mean, 56175 of the California Ed Code sets forth all the criteria you have to do a private placement to be appropriate. And it's not appropriate, number one, no credentialed teachers to begin with. So that's why it's not an appropriate, it doesn't meet the requirements for service of a child in special education, especially a child that has an autistic disability. I think, Judge Owens, do you have any questions? Okay, thank you. You've exceeded your time, but I'll give you a minute or two for rebuttal, okay? Okay, thank you, Your Honor. I appreciate that. Because I know I took a lot of your time. Okay. No, that's fine. Thank you. Please proceed, Ms. Whiteleather. May it please the court. I am Tanya Whiteleather, and I represent Fernando Lua and Sandra Lua, who stand here for their daughter, K.L. First, I'd like to inform the court on page 20 of our answering brief. There was an S.E.R. that lacked page numbers. That should have said S.E.R. 6-7. The Bellflower Unified School District has not prevailed on each and every step of this process. The California Department of Education instructed, directed them at the end of 2016 to hold an IEP for Kimberly, for K.L., who was a student in their district. The Administrative Hearing Office with Linda Johnson, this is all in district's excerpts of the record, indicated that they must hold an IEP and they must conduct assessments. The district court affirmed that. There's been no standard, no, any evidence that calls for a reversal of this, and I just want to address a few things that Mr. Baughman has addressed. The 10-day notice, if the district's position were that you fail to give a 10-day notice in, say, 2014 or early 2015, and you never, ever may come back and ask the district, that would be a terrible public policy. It would mean that forever, this student, whose family resides in the attendance area, the Belfire Unified School District, could never come back and ask for an offer of faith in IEP. I know there was a citation to the Ammon versus Stowe school system case, and in that case, when the student was removed and the parents returned to Stowe school system, Stowe assessed the student and held an IEP. In this matter, when Kayle was removed, her parents did not contest a 2014 IEP. We don't have any problem agreeing that's exactly what happened. However, they contested whatever didn't happen in 15-16 and 16-17, and we believe that they had every right to then come forward in May of 2016, and I believe that's SER, I mean, it's absurd of the record 199-200. It was a May 2015 letter from the parents. It was very clear that they wanted an offer of faith. They communicated that repeatedly to Belfire Unified and were repeatedly told, sorry, no, you must enroll her. So the 10-day notice was regarding an offer of faith for the 15-16, 16-17 school years, and that, in fact, is what the first administrative decision centered on. And Ms. Whiteleather, Mr. Bathin is arguing that because they never intended to go back, that that is sufficient to relieve them of their obligation to reimburse. So what's your response to that? Do you agree that that was communicated, that it was clearly communicated? And if so, yes, tell me why there would not be any obligation to reimburse or why you dispute the intent to return the child to the school district. Ms. Whiteleather First of all, I dispute both the law and the facts, and that's why in our supplemental excerpts of the record, we included the parent's statement on SER 7 and her testimony saying she wanted an offer of faith from the district. Unfortunately, we have a parent who is very good verbally, but she does not completely understand English and requires an interpreter. And the very first day of hearing, our administrative law judge, as Mr. Bathin knows, called us into the room and said, I don't think she's understanding. It was clear at that point she wasn't understanding some of this, even though I had worked with her. I asked her a question. Do you want, if you could get services, I believe I asked first something like, if you, can you want a faith from Bellflower? And she didn't understand. I said, if you could get the services you need and not have to pay public education and get that from Bellflower, and she finally got it. And Mr. Bathin objected. And the judge said, I'm going to allow it. There's been a lot of problem with the translation. And there had. We continued and continued then to ask for faith. The parent said it. And the legal portion of it is even if a parent does not express interest, even if a parent says, I don't think so, the district has a duty to make an offer. And that's the target range case. The district has a clear duty. Yes. So the other question that I had is regarding the school that was discussed right there towards the end, where Mr. Bathin says that there was no accredited teachers and challenges the curriculum. What's your response? And what's your arguments as to why the new Harvest School was a proper placement within the meaning of the regs? I look to the term appropriate. I was lucky enough to get the honor. I'll argue the CB versus Garden Grove case where our student was placed in a, it wasn't even a school. I had no state licensing. And he had some services. He had some education. And it was found to be appropriate, even though it did not provide the full curriculum, even though it did not have special education, even though he was getting essentially one-to-one services. New Harvest Christian School is a private school. On the supplement of the supplemental excerpts of the records, pages six to seven, I included portions of the testimony by Kathy Garcia. The school principal who said they follow state curriculum there. And she talked about the ability of a student to get a California high school diploma. The standard is whether not if it's faith, because obviously it's not free and it's not public. The standard for determining whether it may be reimbursed when a district is found to have failed to provide faith is whether it's appropriate. And in this case, Kathy Garcia, the principal, and the records admitted at hearing established that KL was making progress, that she was getting services. Again, appropriate does not require that they be credentialed. Appropriate does not require that there be a special education program. Appropriate does not require anything more than that the student make progress, which was established. And in the face of the districts not even offering, what were the parents to do? I'm looking to see if I have any, oh, I do want to mention, I believe it's very, very important. The regulations regarding district of location and the state code give a district of location only the ability to hold a meeting to provide an individual services plan. A district of location here at Norwalk-La Mirada does not have the ability to offer an IEP or faith. They can bring the student in and discuss maybe speech and language services. Do you need some tutoring? They do not have a duty to offer faith. So there was no local educational agency to which KL and her parents could turn other than Bellflower Unified School District. That was the only agency available. And the regs are very clear that only the district of residence has the duty. And here we believe that the parents, all their letters with all their requests made it abundantly clear that they were seeking an IEP and offer of faith. I do want to note that it was at finally after CDE had ordered at the end of 2016 that Bellflower hold an IEP. They did so in February of 17, but Mr. Baughman came in and said, and it's at ER 368, that the district wasn't even going to assess KL until the parents enrolled her. So everything went dead. Nothing happened. We ended up filing a second due process, which is now the appeal of which by Bellflower has been stayed pending this matter. There is nothing the parents could get in terms of an IEP from Norwalk La Mirada and Norwalk La Mirada made it very, very clear that they could only offer individual services and not an IEP. I think in this matter, I think it's very simple. I don't think the parents ever backed down from their request, whether or not they agreed that the district offered something appropriate in 2014 is irrelevant, I believe, to their request for an IEP in 15, 16 and 16, 17. And the district's absolute refusal to conduct assessments, even to the point that on February 15, 27, it gave the parents an assessment plan, which Mrs. Lewis signed and gave back to the district and Mr. Balfa then said, no, we're not going to do any assessments. All through that time, no assessments, no IEP, no offer of faith. The parents were between a rock and a hard place. They did whatever they could to get the district to respond and give them what they needed for their daughter under IDE state law. And they went to a placement that they believed was appropriate. We have never sought, by the way, the Zobrist decision, the Supreme Court's decision in Zobrist speaks to religious payment for non-religious items and whether or not a government may pay. We have never sought any payment for religious classes at all. There is a Bible class that was provided or open to KL at the school. We specifically asked the administrative law judge to carve that out from any reimbursement for the curriculum that she was receiving that matched state curriculum at New Harvest Christian School. I think I have no other points to argue. Unless somebody has a question. No, I don't think we do. Thank you, Ms. Whiteleather. Mr. Bethen, I'll give you a couple minutes if you need it. Thank you, Your Honor. The CDE, California Department of Ed, in its order to hold an IEP, we did exactly that. But then there was nothing that followed up except the district continually told the parents that if they enrolled a student that they would offer free and appropriate public education. And we still have to go back to the original IEP, the 1314 IEP, that was not consented, was consented to and not withdrawn until like seven months later when they should have been given notice. A district, for a district to have to pay for tuition when they didn't get a chance to correct the issue. And the major issue was an alleged bullying issue, not necessarily any denial of services, but it was the issue of bullying. That's what the mother was afraid of. And that's, at least by testimony, that's why she withdrew. But the offer of, we've continued with an offer of faith. But the issue about, because Ms. Whiteleather brings up how the judge in the middle of Ms. Lewis' testimony had questions about whether she understood the English questions. And this happened on direct when Ms. Whiteleather was asking those questions. But on cross, it was very clear to me that she kept saying, she's very happy at New Harvest and she's going to stay there. And that was the impression and the language that she was using after they brought in a new interpreter. And I don't think as to Norwalk, I don't think there's anything in the record that said that the Lewis ever asked Norwalk for an assessment. I don't think that ever happened. They did do an ISP, but I don't think there was a request for an assessment. I don't remember anything as being a problem. But the district, the fairness to the district, when you remove a child from the district and don't give the 10 days notice to dealing with a special education child, it really violates the fairness to the district. I mean, if the issue was bullying, if that's what the primary issue and that's the impression I got, she could have been moved to another school. There's a lot of things the district could have done. That's all I have, Your Honor, unless you have questions. No. Thank you. Thank you. Thank you both very much. We appreciate your arguments here today. So the case of Bellflower Unified School District versus Fernando Luis, Sandra Luis is now submitted. And again, thank you. And hopefully sometime soon we can all convene in person. But until then, please be safe. Thank you. You be safe too. Thank you.
judges: Murguia, Owens, Settle